JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Martin Sanders, | No.   CV-24-00750-PHX-JAT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| State of Arizona, et al., | |
| Defendants. | |

On July 8, 2022, Plaintiff Michael Martin Sanders, who is confined in the Arizona State Prison Complex (ASPC)-Lewis, filed a Complaint in the Superior Court of Maricopa County, Arizona, against the State of Arizona. On May 3, 2023, Defendant State of Arizona filed an Answer. On February 23, 2024, the state court granted Plaintiff leave to file an amended complaint but struck certain portions of the proposed First Amended Complaint. On April 3, 2024, Defendant State of Arizona filed a Notice of Removal and removed the case to this Court. In an April 15, 2024 Order, the Court determined removal was proper and dismissed the First Amended Complaint because it was not filed on this Court's approved form. The Court gave Plaintiff 30 days to file a second amended complaint using the court-approved form included with the Order.

On May 1, 2024, Plaintiff filed a Motion to Exceed Page Limit (Doc. 6) and lodged a proposed Second Amended Complaint (lodged at Doc. 7). The Court in its discretion, will grant the Motion and direct the Clerk of Court to file the lodged proposed Second Amended Complaint. The Court will order Defendant Centurion to answer Count One of

TERMPSREF

the Second Amended Complaint; Defendants Michel, Saunders, Coronado, and Nguyen to answer Count Two; Defendant Robles to answer Count Three; and the State of Arizona to answer Count Five; and will dismiss Count Four and the remaining Defendants without prejudice.

## I.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342

(9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.    Second Amended Complaint**

In his five-count Second Amended Complaint, Plaintiff sues the State of Arizona, Centurion of Arizona, LLC ("Centurion"), Arizona Department of Corrections, Rehabilitation and Reentry (ADC) Director Ryan Thornell, Assistant Director of the Contract Monitoring Bureau Larry Gann, Medical Director Grant Phillips, former Facility Health Administrator Michael Delgado, radiologist David Nguyen, nurse practitioner (NP) Oyuki Coronado, and registered nurses (RNs) C. Robles, Melissa Michel, and Shelly Saunders. Plaintiff asserts claims regarding his medical care. He seeks monetary and declaratory relief.

Plaintiff alleges the following:

Plaintiff was housed at ASPC-Lewis Barchey Unit between December 9, 2009 and October 12, 2023. On March 3, 2021, Plaintiff underwent joint replacement surgery for his left shoulder and returned to Barchey Unit the same day. As part of his post-operative recovery plan, Plaintiff was prescribed physical therapy to maximize the benefit of the artificial shoulder joint and three offsite orthopedic follow-up appointments at two weeks, six weeks, and twelve weeks after his surgery. Centurion approved 12 to 15 physical therapy sessions and offsite follow-up visits.

On June 10, 2021, Plaintiff had a high fever, chills, and mild lower back pain. Within hours of the onset of these symptoms, he experienced extreme lower back pain and could not get out of bed. On June 14, 2021, Plaintiff refused to go to his scheduled physical therapy appointment and made Barchey Unit security staff aware of his "ongoing painful bedridden condition."

Two days later, Plaintiff refused to be transported to a previously scheduled offsite orthopedic follow-up appointment because he was still virtually bedridden and his symptoms had significantly worsened into continuous acute lower back pain, fever and

chills, and inability to get out of bed, stand, or walk without assistance. Plaintiff personally reported his symptoms and their history to Defendant Robles, who had come to Plaintiff's cell with two correctional officers (COs) who were assigned to transport Plaintiff to the orthopedic appointment. Defendant Robles and the two COs "were only concerned with [Plaintiff] completing and signing a 'refusal of medical treatment' form" regarding the orthopedic appointment. Neither Defendant Robles nor the COs "took any action towards getting [Plaintiff] [in to] see" a doctor, physician's assistant, or nurse practitioner. Defendant Robles also failed to have Plaintiff submit a health needs request "and/or to call an ICS (incident command system)."

On June 18, 2021, Plaintiff asked the CO II posted to his dorm to activate an ICS so that he could see a healthcare provider. The CO II did so, and Plaintiff was transported via wheelchair to the ASPC-Lewis "ambulance," which then transported Plaintiff to the medical unit for evaluation. The "ambulance" was a standard windowless cargo van with a sliding side door and double rear doors and was not equipped with a wheelchair lift. Plaintiff could not enter or exit the van on his own and had to be "manhandled in and out" of the vehicle. Defendant Saunders and CO II Magee transported Plaintiff to and from the medical unit and saw that Plaintiff was suffering extreme pain.

When he arrived at the medical unit, Plaintiff reported his symptoms and their history to Defendants Saunders and Michel. Defendants Sanders and Michel lifted Plaintiff onto and off an x-ray table to take an x-ray of his lower back. Defendants Nguyen, Saunders, and Michel "deemed" Plaintiff to be suffering from "a common backache" caused by moderate osteoarthritis of the lumbar spine, notwithstanding swelling on the left side of Plaintiff's lower back and Plaintiff's reported pain on palpation, both of which corresponded to a paraspinal shadow on the lumbar x-ray. Plaintiff was given an oral dose of acetaminophen and a special needs order for medical ice three times per day for three days and was returned to his dorm.

On June 21, 2021, Plaintiff again refused to go to his onsite physical therapy appointment. Despite his refusal, Barchey Unit security staff "compelled him to go to the

Unit's west sally port to complete and sign a refusal form," which he did, using a wheelchair to get to the sally port. After he signed the refusal form, Plaintiff asked Centurion medical staff to remove him from the physical therapy appointment scheduled until he was "cured of whatever was then debilitating him." He was never asked to go to physical therapy again.

By June 29, 2021, Plaintiff's symptoms had significantly worsened. He had not eaten for six days or had a bowel movement for ten days. Plaintiff had begun urinating into empty plastic soda bottles because it was too painful to go to and from his bed to the pod bathroom, with or without a wheelchair or assistance from his podmates. Plaintiff also had not slept for more than an hour at a time for the previous week due to the pain he was suffering. That day, Plaintiff asked the CO II in his dorm to activate an ICS. The CO II did so, and Plaintiff was taken by wheelchair to the medical unit.

At the medical unit, Plaintiff reported his symptoms and their history to RN Campa. RN Campa telephoned Defendant Coronado, who gave verbal authorization to give Plaintiff an intermuscular injection of Toradol for pain and Robaxin, an oral muscle relaxer, which RN Campa told Plaintiff would be dispensed the next day. Neither Defendant Coronado nor RN Campa referred Plaintiff to a doctor or physician's assistant for other review or other follow-up treatment.

On July 1, 2021, Plaintiff requested another ICS because his symptoms continued to worsen, and he had not slept for several days because of his pain. His left leg from his knee to his toes had "gone numb," and he could no longer control his sphincter and was suffering urinary incontinence. CO II Thompson found a wheelchair for Plaintiff, activated an ICS, and had Plaintiff's bunkmate take Plaintiff to the medical unit. Plaintiff immediately saw NP Johnson, who examined Plaintiff and put him on oxygen. NP Johnson assessed that Plaintiff's symptoms indicated the presence of a spinal abscess in his lower left back, and she called for an ambulance to transport Plaintiff to the emergency room.

At the emergency room, several doctors examined Plaintiff, and he underwent a CAT scan of his lower back. The CAT scan revealed a softball-sized mass of unidentifiable

composition that was pressing on his lower lumbar spine. Plaintiff was immediately admitted to the hospital and scheduled for emergency spinal surgery.

The next morning, Plaintiff underwent spinal surgery to remove a compressive epidural paraspinal abscess caused by a staphylococcus infection. The abscess was very large and deep at L3-S1, with severe lumbar spinal canal stenosis at L3-S1 and lumbar osteomyelitis and discitis at L3-S1. The abscess was multiloculated and extended from L2-S1, measuring approximately 4.9 cm by 5.2 cm by 13 cm. The staph infection had also compromised the L3-S1 vertebrae, requiring spinal equipment and fusion along with bilateral pelvic equipment to support his vertebrae.

Plaintiff's post-operative care included three daily IV infusions of broad-spectrum antibiotics, which continued until the specimen taken from the abscess during the surgery was positively identified as staph. Plaintiff was then prescribed an antibiotic that targeted the identified strain of staph to be administered three times per day for six weeks via a PICC line. The PICC line was placed on July 8, 2021.

Plaintiff was released from the hospital on July 10, 2021 and transported to the ADC infirmary at ASPC-Central Unit. Plaintiff remained there until August 18, 2021 and was returned to the Barchey Unit. While he was at Central Unit and after his return to Barchey Unit, Plaintiff was not provided with or offered physical therapy or other rehabilitation services and was "on his own to recover from both the injurious effects [of the] staph infection [] and the physical trauma" of spinal surgery and mechanical fusion of vertebrae. As of the date he filed his Second Amended Complaint, Plaintiff had yet to fully recover.

Plaintiff alleges that ADC failed to ensure that Centurion had adequate medical staffing, and as a result, ADC, "via Centurion," failed to comply with the "access to medical requirements" for: prisoners needing urgent medical care to see a healthcare provider within 24 hours; prisoners needing emergency medical care to be immediately seen by a healthcare provider; and prisoners for whom an ICS was activated to be seen by a healthcare provider the next day if the prisoner was not seen on the day of the ICS. Plaintiff asserts that ADC and Defendants Centurion and Gann had an established policy

1    and practice of failing to provide sufficient medical staffing throughout ADC, which placed
2    Plaintiff at an unreasonable and substantial risk of serious harm.

3          Plaintiff contends ADC and Defendants Centurion, Gann, and Phillips had an
4    established policy and practice of tasking nurses with triaging ADC prisoners seeking
5    medical care, which "placed an overreliance on nurses that was unreasonable."  Plaintiff
6    claims this "led to the poor quality and grossly unreasonable clinical decision[-]making"
7    by Defendants Michel, Saunders, Coronado, and Nguyen.  Plaintiff alleges that Defendant
8    Delgado implemented and encouraged the policy and practice with respect to ASPC-Lewis
9    prisoners, knowing that the policy placed prisoners at an unreasonable and substantial risk
10   of serious harm.

11         In Count One, Plaintiff alleges that Defendants Centurion, Gann, Phillips, and
12   Delgado established and/or implemented policies that placed Plaintiff at an unreasonable
13   substantial risk of serious harm.  Plaintiff asserts Defendants Centurion, Gann, Phillips,
14   and Delgado knew their policies and practices would deprive all ADC prisoners, including
15   Plaintiff, ready access to adequate medical care, and despite this knowledge, acted with
16   deliberate indifference to Plaintiff's serious medical needs.

17         In Count Two, Plaintiff asserts deliberate indifference claims against Defendant
18   Michel, Saunders, Coronado, and Nguyen.  Plaintiff alleges that pursuant to Defendants
19   Centurion, Gann, Phillips, and Delgado's policies and practices, Defendants Michel and
20   Saunders practiced medicine beyond the scope of their licenses when they diagnosed
21   Plaintiff with a "common backache" and failed to refer Plaintiff to a healthcare provider
22   for competent diagnosis and treatment for his serious medical need.  Plaintiff asserts
23   Defendant Coronado failed to physically examine and evaluate Plaintiff despite the June
24   29, 2021 ICS and instead "recklessly adopted" Defendants Michel and Saunders's
25   "unqualified" common backache diagnosis while ignoring Plaintiff's worsening symptoms
26   and the "slight but discern[i]ble shadow on his most recent x-rays."  Plaintiff contends
27   Defendant Nguyen "implemented and/or encouraged these same policies and practices via
28   his personal practice of underdiagnosing his radiological reports," which "unduly

TERMPSREF

encouraged" Defendants Michel, Saunders, and Coronado to "engage in their reckless acts and/or omissions." Plaintiff claims Defendant Nguyen willfully ignored the paraspinal shadow on Plaintiff's x-rays and misdiagnosed Plaintiff as having only moderate osteoarthritis of the lumbar spine.

In Count Three, Plaintiff asserts a deliberate indifference claim against Defendant Robles. Plaintiff alleges that on June 16, 2021, Defendant Robles knew Plaintiff was suffering a serious medical condition that required urgent or emergent medical attention but did nothing for Plaintiff other than obtain Plaintiff's signature on a refusal form.

In Count Four, Plaintiff asserts a deliberate indifference claim against Defendant Thornell. Plaintiff alleges that Defendant Thornell has continued the policies and practices of failing to provide sufficient medical staffing and an "unreasonable health care hierarchy that requires nurses to diagnose and treat inmate-patients far beyond their capabilities." Plaintiff asserts Defendant Thornell is aware of the continuing unreasonable policies and practices and knows that they pose an unreasonable substantial risk of serious harm to prisoners, including Plaintiff, but Thornell has failed to take necessary remedial measures.

In Count Five, Plaintiff asserts a negligence claim against the State of Arizona.

### III.  Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

#### A.  Individual versus Official Capacity

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person

to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* Put another way, a claim against an individual in his official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Plaintiff sues Defendant Thornell in his official capacity and Defendant Gann in his official and individual capacities. Plaintiff cannot maintain a lawsuit for damages against Defendants Thornell and Gann in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983. Likewise[,] 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted).

Plaintiff may maintain a lawsuit against Defendants Thornell and Gann in their official capacity for *prospective* declaratory and injunctive relief because under the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). But not all declaratory

and injunctive relief is prospective. The exception is intended to prevent continuing violations of federal law and "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Hindes v. FDIC*, 137 F.3d 148, 166 (3d Cir. 1998) ("The type of prospective relief permitted under *Young* is relief intended to prevent a continuing violation of federal law.").

Plaintiff does not seek injunctive relief, and he seeks retrospective, rather than prospective, declaratory relief. Specifically, Plaintiff asks this Court to "issue a declaratory judgment decreeing [Plaintiff's] constitutional and statutory rights to the provision(s) of ready access to adequate medical care and adequate and timely medical and health services, respectively, that protect him from an unreasonable substantial risk of serious harm and an unreasonable risk of harm, respectively, while an ADCRR inmate." Plaintiff also asks the Court to declare that Defendants Centurion, Gann, Phillips, Delgado, Robles, Michel, Saunders, Coronado, and Nguyen "inflicted wanton and unnecessary pain upon [Plaintiff] in violation of his constitutional right to be free of cruel and unusual punishments, and that Defendant – State of Arizona was negligent in providing [Plaintiff] protection from aforestated unreasonable risk of harm, via its inmate health care contractor, Centurion."

To obtain *prospective* declaratory relief, a plaintiff must "show that he has sustained or is immediately in danger of sustaining some direct injury ... and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citation omitted). Plaintiff has not alleged facts to support that he is in immediate danger of sustaining some direct injury with respect to his medical care. Plaintiff has not adequately stated a claim for prospective declaratory relief, and the Court will therefore dismiss Defendant Thornell, Count Four, and Plaintiff's official-capacity claim against Defendant Gann.

**B.     Defendants Gann, Phillips, and Delgado**

Plaintiff alleges that Defendants Gann, Phillips, and Delgado had policies and practices that put him at substantial risk of serious harm. As noted, Plaintiff names

Defendant Gann in his official and individual capacities, and he names Defendants Phillips and Delgado in their individual capacities. Plaintiff's allegations fail to plausibly show that Defendants Gann, Phillips, and Delgado were in any way personally involved in Plaintiff's medical care. *See Barren*, 152 F.3d at 1194. The Court will therefore dismiss Defendants Gann, Phillips, and Delgado.

## IV.     Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has stated: an Eighth Amendment claim in Count One against Defendant Centurion; an Eighth Amendment claim in Count Two against Defendants Michel, Saunders, Coronado, and Nguyen; an Eighth Amendment claim in Count Three against Defendant Robles; and a negligence claim in Count Five against the State of Arizona. The Court will require these Defendants to answer the relevant portions of the Second Amended Complaint.

## V.     Warnings

### A.     Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B.     Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendants, or counsel if an appearance has been

entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court.  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Plaintiff's Motion to Exceed Page Limit (Doc. 6) is **granted**.  The Clerk of Court **must file** the lodged proposed Second Amended Complaint (lodged at Doc. 7).

(2)    Count Four is **dismissed** without prejudice.

(3)    Defendants Thornell, Gann, Phillips, and Delgado are **dismissed** without prejudice.

(4)    If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(5)    Defendant Centurion must answer Count One.  Defendants Michel, Saunders, Coronado, and Nguyen must answer Count Two.  Defendant Robles must answer Count Three.  Defendant State of Arizona must answer Count Five.

(6)    The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Centurion, Michel, Saunders, Coronado, Nguyen, Robles, and State of Arizona.

TERMPSREF

(7) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(10) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(11) A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(12) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

**TERMPSREF**

- 13 -

(a) personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2), Rule 4(h)(1), and Rule 4(j)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13) Defendants Centurion, Michel, Saunders, Coronado, Nguyen, Robles, and State of Arizona must answer the relevant portions of the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(15) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 27th day of June, 2024.

James A. Teilborg
Senior United States District Judge

TERMPSREF